## L. J. ALLEN v. CENTRAL MOTORS, INC. AND ANOTHER.[1]

January 20, 1939.

No. 31,880.

[1]Reported in 283 N. W. 490.

*John E. Regan, O. A. Brecke,* and *N. T. Waldor,* for appellants.
*James C. Melville,* for respondent.

STONE, JUSTICE.

Defendants appeal from an order denying their motion for a new trial after findings and order for judgment for the amount due plaintiff under a conditional sales contract and the notes they signed for deferred installments of purchase price, and directing the sale of property and application of proceeds on the judgment ordered.

The contract bears date of June 8, 1936. It covers a large inventory, which is attached, of motor trucks, power shovels, "bulldozers," and miscellaneous accessories and equipment. The purchase price was $40,000, $10,000 of which was to be paid in cash. For the remaining $30,000, defendant Central Motors, Inc. delivered to plaintiff concurrently with the contract its 12 promissory notes, each for $2,500, maturing monthly during the period beginning August 8, 1936, and ending July 7, 1937.

Defendant Haley was a participant in the transaction on the purchaser's side from beginning to end, but did not sign the contract or become comaker of the notes. He did indorse them.

The special issue arising from defendants' claim of fraud, hereinafter dealt with, was submitted to the jury, which answered it in the negative, that is, favorably to plaintiff. Thereupon findings of fact, incorporating the verdict, and conclusions of law were made by the trial judge, pursuant to which judgment was ordered. It makes both defendants liable for the unpaid price, but provides that such of the property in question as remains with defendants shall be sold and the proceeds applied on the judgment ordered. We consider the case from the standpoint of each defendant.

*As to defendant Central Motors, Inc.*

The contract has, for one of its terms, this:

"It is also further understood and agreed that the party of the first part [plaintiff] makes no warranties as to the condition of any of this personal property and by this instrument agrees to deliver

and sell such property just as it is and without liability to repair or change the condition of any of it."

■ All of the property, at least all of the machinery, was "second-hand." It had all been used and was sold on that basis. In fact the contract contemplates the probability that needed repairs would aggregate as much as $10,000. The purchaser undertook the obligation of that repair. Furthermore, it agreed to furnish a bond in the sum of $10,000 to indemnify plaintiff from loss on account of such repairs.

Notwithstanding the contract, the answers pleaded fraud in misrepresentations of value and that plaintiff "had already arranged for the sale and disposal of $20,000 worth of said property to various and sundry dealers."

Concerning the defense of fraud, it is enough that it presented the fact issue submitted to the jury and found for plaintiff. All that we need say is that there is in the record an abundance of evidence to sustain the verdict. We assume, without deciding, that, even under the circumstances of this case, the claim of fraud in the particulars pleaded was allowable as a defense.

The answers also pleaded fraud or nondelivery in respect to certain items, some of the trucks, covered by the contract. That fact issue is also settled against defendants by the decision below on the adequate evidence in its support.

After the trial and decision below and by motion for amended findings, the defense for the first time came forward with a claim of implied warranty. Nothing of that kind was pleaded by the answers or suggested as ground of defense at the trial. So it was not within the pleadings nor was it litigated by consent. It was therefore too late for defendants to lug it in after the decision below and seemingly as a belated afterthought.

*As to defendant Haley.*

■ What already appears concerning his codefendant disposes of the whole case except for the fact that Mr. Haley was held liable as indorser of the notes. He was not a comaker. 2 Mason Minn. St. 1927, § 7106 (N. I. L. § 63) ; G. Sommers & Co. v. Tintah Co-op.

Merc. Co. 155 Minn. 107, 192 N. W. 492. Upon this phase the case comes to us in an unusual posture. It was for plaintiff to plead and prove, as against defendant Haley, the indorser, that the notes at their maturity had been presented for payment, dishonored, and that notice of the dishonor had been given Mr. Haley, as the law requires; or that there had been a waiver of presentment and notice of dishonor; or that, under the circumstances, presentment and notice were not required. Burwell v. Gaylord, 119 Minn. 426, 138 N. W. 685; 10 C. J. S., Bills and Notes, § 635. Nothing of that kind was pleaded in the complaint, and so it failed to state a cause of action against Mr. Haley. It was enough for Mr. Haley, on this point, to stand upon his general denial.

But here again the theory and scope of trial, as reflected by the record, show that Mr. Haley's right to have presentment made and notice of dishonor given him was never even suggested to the court, formally or otherwise. There was no motion on his part for judgment on the pleadings. There was none to dismiss as to him when plaintiff rested. There was none for judgment in his favor at the end of the trial. In short, counsel tried the case and submitted it for decision upon the issues expressly presented. Such a submission automatically excludes what it does not include. The theory of trial is said to become "law of the case" for purposes of appeal. Dickson v. Yates, 194 Iowa, 910, 916, 188 N. W. 948, 27 A. L. R. 533. See, also, D. M. & N. Ry. Co. v. McCarthy, 183 Minn. 414, 236 N. W. 766.

After decision responsive to all their contentions, it is too late for counsel to present a new fact issue, unless, perchance, it relates to jurisdiction, or a determinative contract is shown to be illegal as matter of law on the evidence already in. Engstad v. Syverson, 72 Minn. 188, 75 N. W. 125; 1 Dunnell, Minn. Dig. (2 ed. & Supps.) § 407; 3 Am. Jur., Appeal and Error, § 253.

The justice of that rule, as applied to this case, is plain. Had the deficiency of the complaint concerning Mr. Haley been presented to the court, an amendment could properly have been allowed to make it good. 3 Am. Jur., Appeal and Error, § 316. In support of such an amendment plaintiff might have shown that presentment

was made and notice given (oral notice is enough, 2 Mason Minn. St. 1927, § 7139 [N. I. L. § 96]) ; or that it had been waived, 2 Mason Minn. St. 1927, § 7152 (N. I. L. § 109) ; or that there was presentment to and dishonor by Mr. Haley himself, 2 Mason Minn. St. 1927, § 7158 (N. I. L. § 115). As already indicated, Mr. Haley, while not a party to the contract in the legal sense, was a dominating participant in the transaction from beginning to end. By amendment of his answer made at the trial, he averred that he had "caused" his codefendant "to enter into" the contract, and that *he* relied upon the alleged false representations of plaintiff.

The liability of Mr. Haley, like that of his codefendant, has been litigated and determined on the issues presented at the trial. His personal status as indorser was not even suggested during the trial, nor until after the decision. Then, on the advent of new counsel, the point was made for the first time in the motion for amended findings. That was too late.

The contract authorized plaintiff as vendor, upon dishonor of any note, to declare all due. Plaintiff exercised that option. The notes did not carry an acceleration clause. See Jordan v. Flour City F. & T. Co. 159 Minn. 518, 199 N. W. 231. That point did not occur to anyone until after the decision below.

Although the notes were not all overdue at the time of trial, they have matured since. The liability of Mr. Haley has been litigated and fixed by the decision. So the question is now moot whether at an earlier day plaintiff had the right as to him to declare the whole debt due.

Order affirmed.